UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X        03 CV 5405 (NG) (VVP)
SCOTT FLOWERS,

                              Petitioner,

        -against-                                                  <u>OPINION AND ORDER</u>

BRIAN FISHER, Superintendent of
Sing Sing Correctional Facility,

                              Respondent.
------------------------------------------------------------------X

GERSHON, United States District Judge:

        *Pro se* petitioner Scott Flowers applies to this court under 28 U.S.C. § 2254 for a writ of

habeas corpus, alleging that he is being held in custody in violation of the Constitution and laws of

the United States pursuant to the judgment of a court of the State of New York.  For the reasons set

forth below, petitioner's application is denied.


                              **PROCEDURAL HISTORY**

        Following a jury trial in New York Supreme Court, Kings County (Flaherty, J.), petitioner

was convicted of one count of murder in the second degree (depraved indifference), N.Y. Penal Law

§ 125.25[2], and one count of criminal possession of a weapon in the second degree, N.Y. Penal Law

§ 265.03, in connection with the shooting death of Andre Holly.  He was acquitted of an additional

count of murder in the second degree (intentional murder), N.Y. Penal Law § 125.25[1].   On

February 8, 1999, he was sentenced to concurrent prison terms of eighteen years to life on the murder

count and seven and one-half to fifteen years on the weapons count.

Acting *pro se*, petitioner made a motion, dated July 25, 1999, to vacate his judgment of conviction pursuant to N.Y. Criminal Procedure Law § 440.10 on the following grounds: (1) the intentional murder count and the depraved indifference murder count should have been submitted to the jury as alternatives; (2) the trial court's failure to instruct the jury on the defense of intoxication constituted error; (3) petitioner was denied the right to testify before the Grand Jury; (4) petitioner's pretrial counsel was ineffective; and (5) petitioner's trial counsel was ineffective. By order dated December 21, 1999, the trial court denied the motion in its entirety, holding that petitioner's claims either lacked a factual basis to warrant consideration or were matters of record that, pursuant to N.Y. Criminal Procedure Law § 440.10(2)(b), could be reviewed only by an appellate court on direct appeal.

With the assistance of counsel, petitioner filed a direct appeal with the Appellate Division, Second Department, on April 27, 2001, raising one claim: the evidence at trial was insufficient to establish that he had a reckless state of mind at the time of the shooting, which is an essential element of depraved indifference murder, because the only reasonable view of the evidence was that he acted intentionally. On September 25, 2001, petitioner moved *pro se* for an extension of time to file a supplemental brief and to expand the record on appeal to include the minutes of the November 18, 1998 pretrial calendar. Petitioner claimed that, on that date, his trial counsel reached an agreement, pursuant to *People v. Sandoval*, 34 N.Y.2d 371 (1974), with the prosecutor and presiding judge, outside of his presence, concerning the extent to which he would be subject to impeachment by cross-examination about prior bad acts, should he testify. Later, petitioner's appellate counsel joined the motion, but it was denied by the Appellate Division on November 27, 2001. By order dated December 24, 2001, the Appellate Division, rejecting petitioner's insufficiency of the evidence

claim, affirmed his conviction. The Court stated:

> Viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt of depraved indifference murder beyond a reasonable doubt. The People adduced evidence that the defendant acted recklessly with attendant circumstances that objectively created a very grave and substantial risk of death. Eyewitnesses testified that after a minor verbal altercation, the defendant, who had been drinking and smoking marijuana, pursued the victim with a gun, which was ultimately discharged in the victim's face at close range, causing the victim's death. A jury's verdict should be accorded great weight, and if, as here, its conclusion is rational, the court is "not free to vacate a conviction based on a finding of recklessness merely because [it] consider[s] that a finding of intent would have been more plausible in light of the evidence."

*People v. Flowers*, 289 A.D.2d 504, 504 (2d Dep't 2001) (citations omitted). On March 29, 2002, the New York Court of Appeals denied petitioner's application for leave to appeal, finding that "there is no question of law presented which ought to be reviewed by the Court of Appeals." *People v. Flowers*, 97 N.Y.2d 754, 754 (2002) (Rosenblatt, J.).

Subsequently, petitioner filed a motion in the Appellate Division for a writ of error *coram nobis*, claiming ineffective assistance of appellate counsel. Petitioner argued that his appellate counsel was ineffective for failing to request the minutes of the November 18, 1998 pretrial calendar and failing to raise a claim that his right to be present for the *Sandoval* discussion had been denied. The motion was denied by the Appellate Division on March 31, 2003. In his application for leave to appeal the Appellate Division's decision to the Court of Appeals, petitioner asserted an additional ground for his ineffective assistance of appellate counsel claim, that appellate counsel failed to raise a claim of ineffective assistance of trial counsel based on trial counsel's failure to argue that New York's depraved indifference murder statute violated his rights to equal protection and substantive due process. The application was denied on June 10, 2003. A second motion for a writ of error *coram nobis*, raising the same grounds as the first motion, was denied by the Appellate Division on

November 17, 2003, and leave to appeal to the Court of Appeals was denied on January 13, 2004.

Petitioner now seeks a writ of habeas corpus from this court. He raises the following claims: (1) petitioner was denied the effective assistance of appellate counsel because counsel failed to raise a claim that petitioner was denied the right to be present at a material stage of the trial; (2) petitioner was denied the effective assistance of appellate counsel because counsel failed to raise a claim that New York's depraved indifference murder statute violated petitioner's rights to equal protection and substantive due process; and (3) the evidence at trial was insufficient to establish that petitioner had a reckless state of mind at the time of the shooting, which is an essential element of depraved indifference murder, because the only reasonable view of the evidence was that he acted intentionally.[1]

## FACTS

Taken in the light most favorable to the prosecution, the evidence at trial established the following facts: On July 3, 1997, at approximately 9 p.m., Yemi Forest went to hang out on Hollis Avenue, in Queens, where he ran into petitioner, an acquaintance from the neighborhood. A group of women invited Forest and petitioner to join them later in the evening at a club in Nassau County called Moments. Forest went home to change, then returned to Hollis Avenue to meet petitioner. On his way there, Forest saw his friend Andre Holly and invited him to accompany himself and petitioner to the club. Around midnight, Forest and Holly, driving in Forest's gray Ford van,

---

[1]Petitioner's initial petition for a writ of habeas corpus, dated September 30, 2003, raised only the first two of these claims. By application dated November 18, 2004, petitioner sought leave to amend his petition by annexing the state court brief prepared by his appellate counsel, effectively adding the third claim. Such leave was granted by order of this court dated March 23, 2005.

followed petitioner to his house so that petitioner could drop off his car, a gray Volvo. Petitioner then got into Forest's van and the three men drove to Moments. They were denied admission to the club, however, because it was overcrowded. They sat in Forest's van for a while, drinking beer and smoking marijuana. Eventually, they decided to go to a club in Jamaica, Queens, called Colors.

Forest, Holly, and petitioner arrived at Colors sometime between 2:30 a.m. and 3:30 a.m. As the three men exited the van, petitioner accidentally closed the door on Holly's hand. Holly began yelling and cursing at petitioner, and an argument ensued. After about twenty minutes, the club owner, concerned about the disturbance, came outside and gave Holly a bandage for his hand. Petitioner then asked Forest to take him back to his car. All three men got in the van and drove in silence to where petitioner's Volvo was parked.

When they got there, petitioner got out of the van and told Holly that he wanted to fight him. Holly got out of the van, argued with petitioner for a few minutes, then got back in the van and drove away with Forest. Forest and Holly stopped the van, a few minutes later, on 204th Street in Queens. Petitioner pulled up next to them in his Volvo and tried to coax Holly out of the van to fight. Forest tried to calm petitioner down but, when he was unsuccessful, drove away with Holly in the van.

At approximately 4:30 a.m., Forest and Holly pulled up to Holly's house, where they sat in the van, talking. A few minutes later, Ian Jacks, who knew Forest and Holly from the neighborhood, arrived in his truck and parked one car length behind Forest's van. Within moments, petitioner, traveling at a high rate of speed in his Volvo, pulled up alongside Forest's van. He got out of the car, leaned into the van through the driver's side window, which was open, and urged Holly, who was seated in the passenger's seat, to get out of the van and fight him. Holly got out of the van and walked around to the driver's side to face petitioner. Forest remained seated in the driver's seat of

his van, and Jacks remained seated in the driver's seat of his truck.

There was conflicting testimony at trial about what happened next. Forest testified that petitioner pulled out a gun, and Holly said, "What are you going to do?" Trial Transcript at 739-40. Jacks testified that Holly said, "'What, you are going to kill me?' or 'What, you are going to shoot me?', something to that effect." Trial Transcript at 590. Forest testified that petitioner, standing approximately eight feet away from Holly, fired the gun once in the direction of Holly and Forest, who was seated in the van behind Holly. The bullet hit Holly in the head, traveling through his left eye. Jacks gave a similar account, but testified that petitioner was standing only three feet away from Holly at the time of the shooting. In contrast, petitioner testified that it was Holly who had brandished the gun, that petitioner attempted to wrest it from him, and that it went off during the struggle between the two men, striking Holly in the left eye. Forest testified that after the shooting, petitioner approached him in the van and said, "You didn't see nothing." Trial Transcript at 663. Petitioner denied saying that.

Petitioner called three character witnesses, each of whom testified about his reputation for peacefulness. On cross-examination, these witnesses acknowledged that petitioner had been convicted of misdemeanor weapons possession.

Forest and Jacks each admitted having numerous criminal convictions, including convictions for drug sales. Forest testified that Holly, to whom he referred by the nickname "Stone" throughout his testimony, had been a good friend of his, but that petitioner was merely an acquaintance. Jacks testified that he was so frightened by the sight of the gun, he was not able to focus on the details of what transpired between petitioner and Holly. When asked whether he recognized Holly's voice just prior to the shooting, Jacks responded, "Not at the time, I didn't. I wasn't paying attention at the

time– I blacked out.  I was like oh, wow, this just happened.  I can't believe it, that type of thing."

Trial Transcript at 550-51.  During her summation, defense counsel argued that such evidence casts

doubt on the credibility and accuracy of the testimony of Forest and Jacks.  She also noted that both

Forest and Jacks, after having an opportunity to consult with each other at the scene, had told police

that the gun used was a .25 caliber, when it was undisputed at trial that the gun was a .38 caliber, and

that both Forest and Jacks testified that petitioner aimed and fired the gun with his right hand, when

it was undisputed that petitioner was left-handed.

The medical examiner who performed an autopsy on Andre Holly testified that the pattern

of gun powder residue on Holly's face indicated that the muzzle of the gun was two to two and one-

half feet away from Holly at the time that it was fired, and a police officer who responded to the

crime scene after the shooting testified that he found a broken gold chain lying on the ground near

the shoulder of Holly.  Defense counsel argued during summation that that testimony supported

petitioner's account that the gun went off during a struggle.

The medical examiner also testified that, at the time of his death,  marijuana was present in

Andre Holly's system and his blood alcohol level was two and one-half times the legal limit for

driving.  Defense counsel argued during summation that "Andre was two times what the legal limit

is for drunk.  Scott was drunk.  And also fueled by what I call 'post-midnight macho,' a certain

madness that seems to take over young men."

The trial judge instructed the jury that it must consider the intentional murder charge and the

depraved indifference murder charge in the alternative, together with the lesser included offenses of

manslaughter in the first degree (intentional manslaughter), N.Y. Penal Law § 125.20[1], and

manslaughter in the second degree (reckless manslaughter), N.Y. Penal Law § 125.15[1].

Specifically, the judge stated: "Now, jurors, with respect to the four charges, you may find the defendant not guilty of all four charges, or you may find the defendant guilty of only one of those charges. You may not find the defendant guilty of more than one of those charges." Trial Transcript at 1188. The judge further instructed the jury to consider the charges in the following order: first, intentional murder, then depraved indifference murder, then intentional manslaughter, then reckless manslaughter.

With respect to depraved indifference murder, the judge instructed the jury, *inter alia*, that:

> Under our law: "A person's guilty of Murder in the Second Degree when under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person and thereby causes the death of that person."
>
> Some of the terms used in this definition have their own special meaning in our law. I will now give you the meaning of the following terms, recklessly and depraved indifference to human life.
>
> "A person acts recklessly with respect to another person's death when that person engages in conduct which creates a substantial unjustifiable and grave risk that another person's death will occur, and when he is aware of and consciously disregards that risk, and when that risk is of such a nature and degree, that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.
>
> A person also acts recklessly when he creates such a risk but is unaware of that risk solely by reason of his voluntary intoxication."
>
> Under our law: "A crime committed recklessly is generally regarded less serious and blameworthy than a crime committed intentionally, but when reckless conduct is engaged in under circumstances evincing a depraved indifference to human life, the law regards that conduct so serious, so egregious to be the equivalent of intentional conduct.
>
> "Conduct evincing a depraved indifference to human life is much more serious and blameworthy than conduct which is merely reckless. It is conduct beyond which reckless is so wanton, so deficient in morals, sense and concern, so devoid for regard of life of another as to equal in blameworthiness intentional conduct which produces the same result."
>
> In determining whether a person's conduct evinced a depraved indifference to human life, a jury would have to decide whether these circumstances surrounding his reckless conduct when objectively viewed made it so uncaring, so callous, so dangerous and so inhuman as to demonstrate an attitude of total and utter disregard for the life of the person endangered.

Trial Transcript at 1191-93.

With respect to intoxication, the trial judge instructed the jury that it could consider evidence of petitioner's intoxication in determining whether or not his mind was so obscured by drink that he was incapable of forming the particular criminal intent required for any of the crimes charged. The judge further instructed the jury that depraved indifference murder, in contrast to intentional murder, does not require proof of the element of intent and that, as a result, his instruction concerning intoxication was not relevant to the jury's consideration of the depraved indifference murder count.

## DISCUSSION

### I.    Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (1996), mandates deference to state court decisions by federal courts conducting habeas corpus review. Under its provisions, an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in the state court unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The habeas court must presume that the state court's determination of factual issues is correct unless the petitioner demonstrates otherwise by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Supreme Court has held that a state court decision is "contrary to" clearly established Supreme Court precedent if it "contradicts the governing law set forth in [Supreme Court] cases or confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The Court has further held that a state court decision is "an unreasonable application of" clearly established Supreme Court precedent if, from an objective standpoint, the state court applied Supreme Court precedent unreasonably, not simply incorrectly or erroneously. *Id.* at 411. The Court of Appeals for the Second Circuit has clarified this standard, holding that "[although] some increment of incorrectness beyond error is required ... the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Sellen v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

## II.     Exhaustion of State Court Remedies and Procedural Default

A petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1).

Likewise, such a petition may not be grated if the petitioner has defaulted his or her federal claims in state court, either by failing to preserve them for state appellate review or by failing to present the claims to the appropriate state forum within the time period prescribed by state law. Under those circumstances, the independent and adequate state ground doctrine bars federal habeas corpus review. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). The doctrine provides that a

federal court may not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. The independent and adequate state law ground may be either substantive or procedural. *Id*. at 729. Notwithstanding the independent and adequate state ground doctrine, however, a federal court may consider a claim that was defaulted in state court if the petitioner demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrates that failure to consider the claim would result in a fundamental miscarriage of justice because the petitioner is actually innocent of the crime for which he or she was convicted. *Id*. at 750.

### III.    Ineffective Assistance of Appellate Counsel

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on the defendant's first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Claims of ineffective assistance of appellate counsel are analyzed under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Counsel is judged ineffective when: (1) counsel's performance falls below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 687-694. Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; conversely, a defendant must overcome the presumption that the challenged conduct constitutes sound legal strategy. *Id*. at 690.

When preparing an appeal, counsel is not required to advance every nonfrivolous argument that could be made, even if pressed to do so by his or her client. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id*. at 751-52.

### A.    Failure to Raise Right to be Present Claim

Petitioner alleges that he was not present for the discussion on November 18, 1998 that resulted in a *Sandoval* compromise. He argues that his appellate counsel was ineffective for failing to raise a claim that petitioner's right to be present for the discussion was denied.[2]

Under New York law, a hearing held pursuant to *People v. Sandoval*, 34 N.Y.2d 371 (1974), for the purpose of determining the extent to which the prosecution could cross-examine the accused about prior bad acts, should the accused testify, is considered a material stage of a trial at which the accused has a constitutional right to be present, except in circumstances where the nature of the defendant's criminal history and the issues to be resolved at the *Sandoval* hearing render the defendant's presence superfluous. *People v. Dokes*, 79 N.Y.2d 656, 662 (1992).

In a letter to petitioner dated May 1, 2001, which is part of the record before this court, petitioner's appellate counsel explained why she thought the right to be present claim urged by petitioner would be unsuccessful. Counsel stated:

I understand that you are now claiming that you were not present at the *Sandoval*

---

[2]Construing the petition and supporting papers liberally, it appears that petitioner may also seek to assert the underlying right to be present claim here. However, that claim was not exhausted in state court. *See* 28 U.S.C. § 2254(b)(1).

> hearing. But you were not prejudiced for several reasons. First, as I discussed in my last letter, because you (the defense) put on witnesses to attest to your peaceful character, the prosecutor would have been able to introduce evidence of your prior conviction, even if the *Sandoval* ruling entirely kept her from doing so. Second, in your case, the *Sandoval* ruling permitted the prosecutor only to ask whether you had been convicted of a misdemeanor. This was a reasonable ruling for the judge to make. Again, the other information came out from your own character witnesses.

The letter demonstrates that counsel's strategic decision not to raise a right to be present claim was based on sound legal reasoning and professional judgment. Counsel rightly concluded that the right to be present claim had little chance of success and focused petitioner's appeal instead on a stronger claim, that the evidence at trial was insufficient to establish that petitioner acted recklessly in killing Andre Holly. Accordingly, counsel's failure to raise a right to be present claim on petitioner's direct appeal was not objectively unreasonable within the meaning of the first prong of the *Strickland* test, nor was it prejudicial within the meaning of the second prong.

In sum, the Appellate Division's denial of petitioner's ineffective assistance of appellate counsel claim is neither contrary to, nor an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 405-11.

### B.     Failure to Raise Equal Protection/Substantive Due Process Claim

Petitioner argues that his appellate counsel was ineffective for failing to raise a claim on direct appeal that New York's depraved indifference murder statute violated his constitutional rights to equal protection and substantive due process because it is indistinguishable from New York's reckless manslaughter statute, N.Y. Penal Law § 125.15[1].[3]

-----

[3]Construing the petition and supporting papers liberally, it appears that petitioner may also seek to assert the underlying equal protection/substantive due process claim here. However, that claim was not exhausted in state court. *See* 28 U.S.C. § 2254(b)(1).

Petitioner defaulted this claim in state court by failing to raise it to the Appellate Division in his motions for a writ of error *coram nobis*. In any event, it is meritless. The contention that the depraved indifference murder statute is indistinguishable from the reckless manslaughter statute had, at the time of petitioner's direct appeal, been repeatedly rejected by the New York Court of Appeals. *See, e.g., People v. Roe*, 74 N.Y.2d 20, 24; *People v. Register*, 60 N.Y.2d 270, 276-77 (1983).

Petitioner highlights the district court decision in *Jones v. Keane*, 2002 U.S. Dist. LEXIS 27418 (S.D.N.Y. June 6, 2002), *rev'd*, 329 F.3d 290 (2d Cir. 2003), *cert. denied*, 540 U.S. 1046 (2003), in which the district court granted a writ of habeas corpus to a petitioner convicted of depraved indifference murder on the ground that the statute, as applied, violated the petitioner's rights to equal protection and substantive due process. However, *Jones* was decided more than a year after petitioner's appeal was filed; on appeal, it was reversed on the ground that the claim had not been exhausted; and no other court has followed the decision.

In sum, petitioner's appellate counsel cannot be judged ineffective for failing to raise the claim to the Appellate Division.

## IV. Sufficiency of the Evidence

The Due Process Clause protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *In re Winship*, 397 U.S. 358, 364 (1970). A state criminal conviction, therefore, lacks a basis in constitutionally sufficient evidence if, on the evidence adduced at trial, no rational trier of fact could have found that each and every element of the crime was proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). A federal court conducting collateral review of a

state criminal conviction cannot substitute its own judgment for that of the trier of fact, however. "A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume– even if it does not affirmatively appear in the record– that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

When evaluating a sufficiency of the evidence claim on habeas corpus review, a federal court must look to state law to define the elements of a crime. *See id.* at 324; *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). With respect to depraved indifference murder, the New York Penal Law provides that a person is guilty of murder in the second degree when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal Law § 125.25[2]. Thus, to convict someone of depraved indifference murder, the State must prove beyond a reasonable doubt that: the accused acted recklessly; the accused engaged in conduct that created a grave risk of death to another person; the accused's risk-creating conduct caused the death of another person; and the accused acted under circumstances that evinced a depraved indifference to human life. Under New York law, "[a] person acts recklessly with respect to a result or to a circumstance . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto." N.Y. Penal Law § 15.05[3]. One who acts intentionally in shooting a person to death– that is, with the conscious objective of bringing about that result– cannot at the same time act recklessly– that is, with

conscious disregard of a substantial and unjustifiable risk that such a result will occur. The act is either intended or not intended; it cannot be both simultaneously. *People v. Gallagher*, 69 N.Y.2d 525, 529 (1987). For that reason, the use of a weapon can never result in depraved indifference murder when the person wielding it possesses a manifest intent to kill. *People v. Payne*, 3 N.Y.3d 266, 271 (2004).

Nevertheless, in some cases the evidence may be sufficient to support conflicting inferences of both intentional conduct and reckless conduct. In such cases, a reviewing court must defer to the trier of fact to resolve the conflict. *See Jackson*, 443 U.S. at 326; *People v. Tankleff*, 199 A.D.2d 550, 554 (2d Dep't 1993), *aff'd*, 84 N.Y.2d 992 (1994) ("We agree with the defendant to the extent that he argues that the evidence presented by the prosecution is far more consistent with the conclusion that he intended to kill his mother than with the jury's conclusion that he killed her recklessly. However, we are not free to vacate a conviction based on a finding of recklessness merely because we ourselves consider that a finding of intent would have been more plausible in light of the evidence.").

In recent years, the depraved indifference murder statute has been the focus of intense scrutiny by the New York Court of Appeals. *See generally People v. Feingold*, 7 N.Y.3d 288, 292 (2006) ("[After] *Sanchez*, and beginning in 2003, a number of decisions by this Court have pointed the law in a different direction."). In *People v. Sanchez*, 98 N.Y.2d 373 (2002), the defendant and the victim, Timothy Range, boyfriends of two sisters, got into an argument while attending a family party at the home of one of the sisters. The victim asked the defendant to step into the hallway, where two children were playing. The defendant followed the victim into the hallway, exchanged words with him, then started to walk back inside. When he reached the doorway, he abruptly turned

toward the victim, who was standing behind the partially opened door, pulled out a gun, and fatally shot him in the torso. Following a conviction for depraved indifference murder, the defendant raised a twofold challenge to the sufficiency of the evidence supporting his conviction. First, he argued that the State's proof was consistent only with an intentional killing and, as a result, that there was no reasonable view of the evidence under which he could have been found guilty of causing the victim's death recklessly. Second, he argued that the record was devoid of evidence of circumstances evincing a depraved indifference to human life. The Court rejected both arguments.

With respect to the first argument, the Court stated that, "[v]iewing the evidence in the light most favorable to the People, as we must, a rational jury could harbor a reasonable doubt that the homicide of Range was intentional . . . . The two men were friends, had engaged in activities together and socialized because of their intimate relationships with the sisters. The shooting itself appeared to have been sudden, spontaneous and not well-designed to cause imminent death. *Id.* at 377. Further, the Court stated that the jury could have concluded "that this was an instantaneous, impulsive shooting– perhaps to disable or frighten Range, rather than to kill him. Thus, a jury reasonably could have found that defendant's homicidal level of mental culpability was reckless rather than intentional." *Id.* at 377-78.

With respect to the second argument, the Court held that, "once it rejected intentional murder, the jury . . . could reasonably conclude that defendant's conduct was so manifestly destined to result in Range's death as to deserve the same societal condemnation as purposeful homicide." *Id.* at 378. Reaffirming the holding of *Register*, 60 N.Y.2d at 279, that the depraved indifference element of depraved indifference murder focuses not on the subjective state of mind of the defendant, but, rather, on an objective assessment of the degree of risk presented by defendant's reckless conduct,

the Court explained that depraved indifference murder is distinguishable from reckless manslaughter by the degree of risk presented by defendant's conduct. *Sanchez*, 98 N.Y.2d at 379-80. Depraved indifference murder, which requires both a reckless state of mind and attendant circumstances evincing a depraved indifference to human life, entails a much greater level of risk than reckless manslaughter, which requires only a reckless state of mind without more. *Id.* The crux of depraved indifference murder, the Court said, "is recklessness exaggerated by indifference to the circumstances objectively demonstrating the enormity of the risk of death from the defendant's conduct." *Id.* at 380.

Judge Rosenblatt, writing in dissent, expressed concern "over the way in which the concept of depraved indifference murder has been increasingly expanded." *Id.* at 394. He asserted that the majority conflated depraved indifference murder with intentional murder by affirming defendant's conviction for depraved indifference murder when the evidence strongly indicated that the defendant acted intentionally. *Id.* In addition, Judge Rosenblatt asserted that the majority conflated depraved indifference murder with reckless manslaughter by failing to recognize depraved indifference as a subjective mental state and, instead, holding that the only *mens rea* required for depraved indifference murder is recklessness, which is the same *mens rea* required for reckless manslaughter. *Id,* "These mergers," Judge Rosenblatt said, "are out of line with the history of depraved indifference murder, the statute's purpose and its unique place in the legislative design." *Id.*

Since its decision in *Sanchez*, the Court of Appeals' jurisprudence on depraved indifference murder has evolved to address both of the concerns articulated by Judge Rosenblatt. The scope of the crime has been curtailed in two ways. First, in an effort to highlight the distinction between depraved indifference murder and intentional murder, the Court has narrowed the circumstances in

which dual inferences of intentional and reckless conduct may permissibly be drawn, explaining that, in most cases, one-on-one shootings and stabbings give rise to an exclusive inference of intentional conduct. For example, in *People v. Gonzalez*, 1 N.Y.3d 464 (2004), the defendant kicked in the door of a barber shop, stepped inside, pulled a gun from his waistband, and shot the victim in the chest. As the victim fell to the floor, the defendant fired again, shooting him in the head. The defendant then leaned over the prone body and fired eight more shots into the victim's back and head. *Gonzalez*, 1 N.Y.3d at 465. Characterizing the shooting as "a quintessentially intentional attack directed solely at the victim," *id.* at 469, the Court affirmed the decision of the Appellate Division, which had reversed the defendant's conviction for depraved indifference murder on the ground that the evidence was insufficient to establish that the defendant acted recklessly in causing the death of the victim; instead, the Court found that the only reasonable view of the evidence was that the defendant acted intentionally. The Court stated that "[t]he prosecution's speculative argument– that the jury may have concluded that defendant recklessly fired the first spontaneously or impulsively and then decided to intentionally shoot nine more times– is unsupported by any reasonable view of the evidence and thus no rational jury could have accepted it." *Id.* at 467. The Court later stated that, "[w]hen defendant shot his victim at close range, he was not recklessly creating a grave risk of death, but was creating a virtual certainty of death born of an intent to kill." *Id.* at 468. *See also Payne*, 3 N.Y.3d at 273 ("[A] one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder.").

Second, in an effort to highlight the distinction between depraved indifference murder and reckless manslaughter, the Court has heightened the standard for "circumstances evincing a depraved indifference to human life." *See, e.g., People v. Suarez*, 6 N.Y.3d 202, 215 (2005) ("We depart

slightly from the *Register* formulation . . . in that we make clear that the additional requirement of depraved indifference has meaning independent of the gravity of the risk . . . . [T]o focus . . . on only the degree of risk presented by a defendant's reckless action gives insufficient guidance to prosecutors, courts and juries struggling to distinguish between these very different crimes."). Ultimately, the Court overruled *Register* and *Sanchez*, holding that the statutory element of depraved indifference describes a subjective *mens rea* rather than an objective set of circumstances that define the risk attendant on a defendant's conduct. *See Feingold*, 7 N.Y.3d at 294 ("We say today explicitly what the Court in *Suarez* stopped short of saying: depraved indifference to human life is a culpable mental state.").

In *People v. Atkinson*, 21 A.D.3d 145 (2d Dep't 2005), *modified*, 7 N.Y.3d 765 (2006), the defendant, following a dispute over the sale of drugs, pointed a gun at the victim while inside the victim's grocery store and shot him in the neck from a distance of four to five feet in the presence of several bystanders. While the victim was still conscious and talking, the defendant left the store. The victim later died, and the defendant was convicted of depraved indifference murder. The Appellate Division upheld the defendant's conviction over a twofold challenge to the sufficiency of the evidence identical to the one raised in *Sanchez*. Rejecting the defendant's argument that the only reasonable view of the evidence led to a conclusion that he acted intentionally, the Court held that, "[i]nasmuch as the defendant fired his small caliber weapon only once and left the store while the deceased was still conscious, speaking, and surrounded by persons who could, and did, seek medical assistance for him, a rational jury certainly could have concluded that the evidence did not establish that the defendant intended to kill the deceased," and, instead, established that the defendant had acted recklessly in causing his death. *Id.* at 153. The Appellate Division also rejected the

defendant's claim that the evidence was not sufficient to establish that he acted under circumstances evincing a depraved indifference to human life. It held that a reasonable jury could have concluded that, "although the defendant did not harbor the conscious objective of killing the deceased, he committed a reckless act that was imminently dangerous to the deceased and created a very high risk that he would die, and was so wanton, so deficient in a moral sense of concern, so devoid of regard for the deceased's life, and so blameworthy as to warrant the same criminal liability, as would be imposed if the defendant had killed the deceased intentionally." *Id*. at 155-56.

The Court of Appeals reduced defendant's conviction from depraved indifference murder to reckless manslaughter, holding that, although the evidence was sufficient to establish that the defendant acted recklessly, it was not sufficient to establish that he acted under circumstances evincing a depraved indifference to human life. Specifically, the Court stated that "dismissal of the indictment is neither required nor warranted. The facts are sufficiently different from *Payne* to enable a jury to reasonably conclude that defendant's actions, although not depraved, were reckless. Among other evidence, testimony at trial could have led a rational jury to infer that the victim moved into a shot that was intended only to scare him." *Atkinson*, 7 N.Y.3d at 766-67.

The evolution of the construction of the depraved indifference murder statute by the New York Court of Appeals has created some confusion for federal courts conducting collateral review of depraved indifference murder convictions. In particular, questions persist about whether the State Court has created new law, or merely clarified law that was already in existence, and about the extent to which the holdings of recent cases are applicable retroactively. *See, e.g., Policano v. Herbert*, 453 F.3d 75, 76 (2d Cir. 2006) (certifying questions to the New York Court of Appeals concerning the elements of depraved indifference murder at the time of the petitioner's conviction); *see also* the

concurring and dissenting opinions in *Policano v. Herbert*, 453 F.3d 79 (2d Cir. 2006) (denying *sua sponte* motion for rehearing *en banc* of the petition for a writ of habeas corpus).

Here, petitioner's challenge to the sufficiency of the evidence supporting his conviction of depraved indifference murder focuses exclusively on the recklessness element of the crime. Relying on the brief prepared by his state appellate counsel, petitioner argues that the evidence at trial demonstrated that he acted intentionally in killing Andre Holly and is therefore inconsistent with a finding of recklessness.

Even on the narrowest construction of recklessness on the continuum of the New York Court of Appeals' recent jurisprudence, the jury's finding that petitioner acted recklessly is supported by constitutionally sufficient evidence. Unlike in *Payne*, 3 N.Y.3d at 271, the evidence did not demonstrate that petitioner possessed a manifest intent to kill Andre Holly. Rather, the jury reasonably could have concluded that, after a long evening of drinking and smoking marijuana, petitioner, fueled by "post-midnight macho," brandished the gun to threaten Andre Holly or to intimidate him. Such action, on a public street with at least two bystanders present, in the dim, pre-dawn light of early morning, undoubtedly constituted a gross deviation from the standard of conduct that a reasonable person would observe and created a substantial, unjustifiable, and grave risk of death to those present.[4] Further, the jury reasonably could have rejected petitioner's testimony that Holly was the one who brandished the gun, but credited petitioner's testimony, supported by the evidence of the gun powder residue and broken gold chain, that the gun went off during a struggle

---

[4]The statutory standard for recklessness is higher for depraved indifference murder than for other reckless crimes. The depraved indifference murder statute requires that the risk created by a defendant's conduct be "grave," in addition to being substantial and unjustifiable. *See* N.Y. Penal Law § 125.25[2]; *Sanchez*, 98 N.Y.2d at 380.

between the two men. *Cf. Atkinson*, 7 N.Y.3d at 766-67 (holding, in a case involving a one-on-one shooting at close range, that the facts were sufficiently distinguishable from those in *Payne* that a reasonable jury could conclude that the defendant's actions were reckless rather than intentional).

Petitioner emphasizes that the prosecutor, in summation, argued principally that petitioner acted intentionally in killing Andre Holly, characterizing the shooting as "a cold-blooded intentional thought through murder." Trial Transcript at 1107. The jury, however, was not bound by the prosecutor's interpretation of the evidence. The trial court correctly instructed the jury, prior to the summations, that: "when the attorneys sum up to you, they are giving you their version of what the evidence has been and what they think the evidence suggests. Nothing the attorneys say in their summations is evidence in the case. And no matter what they say, it is always your recollection of the evidence that controls and also your evaluation of the evidence that controls. However, if either attorney makes an argument that is persuasive to you, you may take that as your own. On the other hand, if you don't agree with it, of course you may reject [it]." Trial Transcript at 1071-72.

The trial judge charged the jury as to the elements of both intentional murder and depraved indifference murder. The jury was free to reject the prosecutor's argument that the killing was intentional, as it did, and find instead that it was the result of petitioner's reckless conduct. Based on the evidence adduced at the trial, a rational jury could have concluded beyond a reasonable doubt that petitioner acted recklessly in causing the death of Andre Holly.

During state appellate review of his conviction, petitioner did not challenge the sufficiency of the evidence supporting the jury's finding that he acted under circumstances evincing a depraved indifference to human life, and he did not seek, as alternative relief, that his conviction be reduced to reckless manslaughter. Nor does he raise that unexhausted claim in this proceeding.

In sum, I cannot conclude that the Appellate Division, in rejecting petitioner's claim that the evidence was insufficient to establish that he acted recklessly in causing the death of Andre Holly, contradicted the Supreme Court law, embodied in *Jackson v. Virginia*, 443 U.S. 307 (1979), which governs petitioner's claim, or applied it in an objectively unreasonable manner. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 405-11.

## CONCLUSION

For the reasons set forth above, petitioner's application for a writ of habeas corpus is denied. In light of the pendency of the questions certified to the New York Court of Appeals by the Court in *Policano v. Herbert*, 453 F.3d 75, 76 (2d Cir. 2006), concerning the proof required under New York law to support a conviction for depraved indifference murder, petitioner is granted a certificate of appealability with respect to his insufficiency of the evidence claim. With respect to his other claims, since petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied. *See* 28 U.S.C. § 2253(c). Petitioner is granted *in forma pauperis* status for the purpose of an appeal. 28 U.S.C. § 1915(a)(3). The Clerk of Court is directed to enter judgment for respondent and close this case.

**SO ORDERED.**

_____/S/_____
**NINA GERSHON**
**United States District Judge**

Dated:  Brooklyn, New York
         October 20, 2006